DALE E. BIRDSELL

*v.*

STATE OF TENNESSEE.

(*Nashville,* December Term, 1958.)

Opinion filed October 2, 1959.

632

Wallace P. Lopez, Memphis, for plaintiff-in-error.

William D. Grugett, Assistant Attorney General, for the State.

MR. JUSTICE BURNETT, delivered the opinion of the Court.

Birdsell was indicted, tried and convicted of the offense of contributing to the delinquency of a minor under Section 37-270, T.C.A. The jury fined him $1,000 and sentenced him to serve 11 months and 29 days in the Shelby County Workhouse. He seasonably filed a motion for new trial and perfected his appeal to this Court where assignments of error, briefs, and arguments have been heard. We now have the matter for disposition.

Birdsell had various aliases and was engaged in part of his activities as a model agent in various parts of the United States. He met the prosecutrix, Patricia Nettles, a young girl, sixteen years of age, at the Ritz Hotel in Washington, D. C., where she had come after running away from home. On the day that he met her in this hotel, he dined with her and convinced her that she was intended to be a model. While in Washington she signed a contract, which is long and in a very fine print, to accomplish this purpose. They remained in Washington for some four or five days before going to Winchester, Virginia, where they remained a few days and then returned to Washington for three or four days. At the defendant's suggestion then they left Washington by way of bus to go to New Orleans to further her career. On their way from Washington to New Orleans they came through Nashville, Tennessee, where they stayed three or four days and registered in the hotel as man and wife. After being in Nashville two or three days they went on to Memphis where they registered as man and wife at the King Cotton Hotel.

█ The testimony in this record is in the narrative form and we have very carefully read it word for word and from it we relate the facts above and as follows. This girl testifies that she at no time had sexual relations with the plaintiff in error but that while they were staying in Nashville she met a soldier and after a few beers she did have sexual relations with him. As a result of this the plaintiff in error found out that she had done this and threatened her with prosecution for perjury and to have the soldier prosecuted for rape. In making these threats to her he wrote out a statement, which is filed in the record, and showed it to her, of what sentence she would be given for perjury and what the offense of rape amounted to.

On the first night after they arrived in Memphis the defendant insisted upon taking some pictures of this sixteen year old girl in the nude in their hotel room. She permitted these pictures to be taken and after this was done he insisted that she go to bed with him in the nude. She says that she went to bed with him but that she wore her pants. She states, and so does he, that they had no sexual relations. The next morning after these pictures were taken and this occurrence in the bed, she evidently became frightened and went first to see a Lutheran preacher which was her faith, not finding him there she went on to another minister and fully disclosed to this minister what was going on. As a result of this statement of the girl to this minister, a Mr. Williams, the police were called (she insisted at first that the police not be notified) and they with the girl went to the room of the defendant and this girl where he soon arrived. He was arrested in this room and placed in the Shelby Coun-

638

ty Jail where he, according to statements of counsel at the Bar, still remains.

The plaintiff in error has made 11 assignments of error. The first three of these assignments relate to the preponderance of the evidence and very vigorously insist that there is no evidence to sustain this conviction of contributing to the delinquency of a child, nor is there any corroborative evidence to support the statements of this young girl.

We have briefly above reviewed what she relates as having happened. In our judgment this constitutes very material evidence of contributing to the delinquency of a child. One living in modern times can hardly imagine anything more enticing to a sixteen year old girl than to be told of her physical beauty and charm to such an extent that she could be a model or be in the movies. Thus it was that when this man insisted on taking her picture in this condition this clearly amounted to a contribution to her delinquency. She testifies that she had run away from home, that she had come to Washington with her father and was going to do some work and some shopping but that she decided to leave home because she and her mother had not gotten along. What could be more of a contribution to what any adult man could imagine with the future than having this young girl pose in the nude for pictures and then sleep various nights with the man. The defendant was 37 years of age. It makes no difference whether or not he had sexual intercourse with this girl at the time, what he did certainly was a direct contribution to her delinquency.

We think, too, that there is ample corroboration of these acts. In the first place the defendant took the

stand in this case and substantially corroborates the various statements of the female. He corroborates it to such an extent that he admits that he does have a camera and he does have these contracts. He admits that this is part of his profession and has various contracts and licenses, etc. He dealt under one name or the other, and conceded that he was recruiting models. Another corroboration is when this young girl went to this preacher the morning after this and related these things. We think this likewise amounts to corroboration because a young girl of the kind would hardly go in a strange town to a strange preacher and relate these acts if they had not occurred. So it is that we think that the jury had ample material evidence properly corroborated to support these accusations.

■ Assignment of error number 4 questions the constitutionality of Section 37-270, T.C.A., under which this indictment is found because it is said that it (the indictment) is too vague and uncertain to inform the defendant, plaintiff in error here, as to the offense of which he is charged. We think clearly that this assignment must be overruled because the language of the indictment charges the plaintiff in error with contributing to the delinquency of a named girl. The contributing to the delinquency of a child does not have to be or cannot specifically be defined.

■ When the charge of contributing to the delinquency of a child or children is made against a party this term is broad enough and may involve a single act or course of conduct, and may be committed in an unlimited variety of ways which tend to produce or encourage or to continue conduct with a child which would amount to

delinquent conduct. *Commonwealth v. Stroik*, 175 Pa. Super. 10, 102 A.2d 239.

■ In addition this defendant is specifically charged in this indictment with sufficient notice of what he is going to have to defend. It charges him with having this girl pose for photographs in the nude and persuading her to remain out of the control of her parents. We hardly see how more notice could be given the defendant than is given under this indictment. We therefore think that there is no violation of Article 1, Section 8 of the Constitution of this State or any other constitutional provision that we know of. This assignment must therefore be overruled.

■ The next assignment of error questions the jurisdiction of the grand jury and the criminal court of Shelby County to deal with this matter. It is argued that Chapter 177 of the Public Acts of 1955 which is codified as Section 37-242 et seq., of the Code does not permit the indictment of one who contributes to the delinquency of a minor but that the defendant first must be investigated and found guilty of delinquency by the juvenile court of the various counties. It is said that that court (Juvenile Court) must swear out a warrant and it is only from this that the grand jury may return an indictment. This is a fallacious understanding of the Act. The Act is a general Act "for the dispositon of delinquent, dependent, neglected and abandoned children by providing a complete scheme for treatment thereof including the creation of a juvenile court", etc., and to declare certain crimes. In Section 29 of the Act (codified as Section 37-270, T.C. A.) the Legislature provided that an adult who did contribute to or encourage the delinquency of children

should be guilty of a misdemeanor "triable in the circuit or criminal court". The punishment is fixed if they are found guilty that may be given them. The same section of the Act provides that if it is made known to the judge of the juvenile court of alleged delinquency that he may investigate and refer the person guilty of contributing to the delinquency of a child to the grand jury.

■■ Counsel apparently confuses the purpose of the Act which in trying to rehabilitate minors by having created juvenile courts who investigate these things and try to keep the child out of a court with the crime which is committed, not by a child, but by an adult. Nowhere in the Act is the prosecution of such an offender prohibited. The grand jury under its general inquisititional powers, regardless of this Act or another, would have the right to investigate these things. This right is conferred upon the grand jury by Section 40-1605, T.C.A. Clearly we think thus that the offense was subject to an indictment by the grand jury if they found sufficient facts upon which to return an indictment. This assignment is overruled.

The courts of New York in *People v. Dritz,* 259 App. Div. 210, 18 N.Y.S.2d 455, 456, have reached substantially the same conclusion where a similar defense was made. That Court said:

"We do not construe Section 6, subdivision 4, of the Children's Court Act to require that the child be actually adjudged delinquent before the commencement of the proceeding against the adult. Commission of an act which contributes to the child's delinquency is the sole condition upon which jurisdiction depends."

Assignments 6, 7, and 8, deal with the charge of the court to the jury on juvenile delinquency. They are very brief in that Assignment 6 charges that the court erred in charging that it was a jury question as to the meaning of "an act of delinquency", and Assignment 7, the court erred in failing to charge and define "an act of delinquency", and Assignment 8, that the court erred in charging the jury as to statute defining a delinquent child. In the first instance these assignments hardly comply with Rule 14 of this Court as found in 185 Tennessee. In the second place we have very carefully read the charge of the court and we think that the charge is adequate. In the first place the court charges the statute, Section 37-242, T.C.A., which under subdivision (5) thereof undertakes to statutorily define what is meant by a delinquent child. Consequently when one contributes to these delinquencies which obviously cannot be set out by specifically naming every act that would constitute delinquency but they are made in such broad terms that when the acts committed clearly under modern and human ideas of what is delinquency in society the charge is sufficient.

The next assignment of error, Number 9, complains because the court did not charge the law of circumstantial evidence. It is not necessary of course to charge circumstantial evidence when there is direct evidence given to the jury upon which they could find the party charged guilty or not guilty. In this case the evidence is direct and not circumstantial and of course under our authorities the failure to give a charge of circumstantial evidence does not constitute error. *Rushing v. State,* 196 Tenn. 515, 268 S.W.2d 563.

 Assignment Number 10 is divided into four parts and complains of the testimony of the prosecutrix as to acts of delinquency before these parties arrived in Memphis, Tennessee, that is, the plaintiff in error complains of her stating the number of nights they stayed in Nashville, about her being enticed in Washington, and things of that kind that happened to her before they got within the jurisdiction of the criminal court of Shelby County. The evidence of these acts was admissible, we think, because they were leading up to and part of the acts of the plaintiff in error leading up to the specific acts as charged as committed in Memphis, Tennessee. As this Court said in *Rafferty v. State,* 91 Tenn. 655, 16 S.W. 728, 730:

"As a general rule evidence of distinct antecedent acts or transactions is to be rejected as altogether inadmissible against a person on trial for a particular offense; but where the offense is consummated by a trick, a fraud, or a system of acts or representations, such antecedent acts or transactions are admissible to establish unlawful intent, or bring guilty knowledge home to the defendant in the particular case."

Clearly what this man was doing in getting this girl to sign a contract and showing her all of these and making all of this admissible and all of these different things was a system of acts or representations that were leading on up to the final act of taking pictures in the nude and asking her to sleep with him in the nude. We can see no prejudice to the plaintiff in error in this particular and think that they were clearly admissible to make the whole picture of what was the final consummation.

■ It is also complained that the court erred in allowing the camera and paper writing, heretofore referred to, made in the handwriting of the plaintiff in error as to what this young girl would have suffered if she was found guilty of perjury and what would happen to the boy that had intercourse with her, etc. This was not inadmissible because of the fact that this was just an additional physical evidence, in his own handwriting, which he admitted himself that he wrote for the purpose of showing the persuasive powers and the hold that he had over this child in making her do these things. We therefore think that there was no error in this.

■ Then there is the final assignment that the court erred in overruling the motion for a new trial. In the first place, of course, this catch-all statement does not comply with Rule 14. Each of these things is set out in the motion for new trial which have heretofore been assigned as specific assignments of error and we have ruled on them as hereinabove set forth.

■ It was complained in the oral argument, and was assigned in the motion for new trial, that it was error to show that the plaintiff in error had passed bad checks and this and that in the course of this trial. We think that this is not error for the specific reason that in the direct testimony as related in this narrative bill of exceptions the plaintiff in error was asked about these things on direct examination and testified about them.

■ We have very carefully considered this matter and find no error in the record. It appears in the record that when the motion for new trial was heard, upon request of the defendant, he was allowed credit on his sentence of the time up to that time that he had remained

in jail. At the Bar of this Court counsel stated that this request was continued here before this Court provided we affirmed the sentence. We grant this request and the judgment as rendered by the trial court as to the amount of time that this plaintiff in error has spent in the workhouse will be credited with the time that he has spent in jail up until the time of the release of this decision. The judgment of the trial court is in all things affirmed subject to the credits hereinbefore indicated.

The argument is made, in arguing on the question of the weight of the evidence, that this child gave her age as 21 when signing the contract and then only as 16 when she was on the stand here. Of course questions of this kind are questions for the jury to determine whether or not she was within the statutory age of a child, that is, under 18 years of age (Sec. 37-242, T.C.A.) and we of course cannot say that her age preponderates against what the jury accepted as her age. Naturally a child of this age would be inclined to try to make herself older when she was wanting to sign a contract to be a model. So we see no earthly reason why we should say now that she was over the statutory age above referred to.