753 S.E.2d 875

**STATE of West Virginia, Plaintiff Below, Respondent**

v.

**Kendra SULICK, Defendant Below, Petitioner.**

No. 11–0043.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 24, 2012.

Decided Feb. 23, 2012.

Christopher J. Prezioso, Esq., Luttrell & Prezioso, PLLC, Martinsburg, WV, for the Petitioner.

Christopher C. Quasebarth, Esq., Chief Deputy Prosecuting Attorney, Martinsburg, WV, for the Respondent.

DAVIS, Justice:

The petitioner herein and defendant below, Kendra Sulick (hereinafter "Ms. Sulick"),

was convicted by a jury on three counts of criminal civil rights violations pursuant to W. Va.Code § 61–6–21(b) (1987) (Repl.Vol. 2010).[1] A sentencing order was entered December 16, 2010, by the Circuit Court of Berkeley County, wherein Ms. Sulick was sentenced to consecutive terms of two years each for her three convictions. Ms. Sulick's six-year sentence was suspended. After affording credit for time served, she received a five-year period of probation. Before this Court, Ms. Sulick appeals the circuit court's denial of her post-trial motions. In her argument, Ms. Sulick raises several arguments that essentially challenge the constitutionality of W. Va.Code § 61–6–21(b) on vagueness and proportionality grounds. Because we find the statute to be constitutional, and based upon the parties' written briefs and oral arguments, the record designated for our consideration, and the pertinent authorities, we affirm the underlying rulings by the circuit court.

## I.

## FACTUAL AND PROCEDURAL HISTORY

Ms. Sulick was indicted by the Berkeley County Grand Jury in February 2010 for nine counts of criminal civil rights violations pursuant to W. Va.Code § 61–6–21(b), and for three counts of conspiracy to commit a criminal civil rights violation pursuant to W. Va.Code § 61–10–31 (1971) (Repl.Vol.2010).[2] The factual history leading to the indictments shows an account of agonistic neighbors.

Ms. Sulick lived with Bruce Poole and their two minor children (hereinafter the "Poole–Sulick family") about eighty feet from Brian Smith, Betty Ann Obiri, and their two minor children (hereinafter the "Smith–Obiri family"). The Poole–Sulick family is an all-Caucasian household, while the Smith–Obiri family are all African–Americans. It is undisputed that the families lived in close proximity to each other from July 2005 until December 2007 without significant incident. However, the neighborly relationship changed drastically in 2007 when Bruce Poole shot the Smith–Obiri family's two dogs,[3] alleging that the dogs were attacking the Poole–Sulick family's dogs. The parties characterize this shooting incident as a shifting point in their relationship with both families alleging subsequent name-calling, harassment, and other bad behavior. A more detailed factual account will be revealed in the Discussion portion of this opinion.

Ms. Sulick and Bruce Poole were indicted in February 2010 on multiple counts of criminal civil rights violations against the Smith–Obiri family.[4] Petitioner, Ms. Sulick, was indicted on twelve counts, three of which were dismissed prior to trial.[5] Ms. Sulick went to trial on June 8, 2010, for the remaining nine counts, all of which alleged violations of W. Va.Code § 61–6–21(b). Two days later, a jury found Ms. Sulick not guilty of six counts, but found her guilty on the remaining three counts.[6] Thereafter, Ms. Sulick filed a motion for arrest of judgment, a motion for a new trial, and a renewed motion for judg-

1. For the relevant language and discussion regarding W. Va.Code § 61–6–21(b) (1987) (Repl. Vol.2010), see section III., *infra*.

2. The conspiracy counts were dismissed, with prejudice, based upon Ms. Sulick's motion to dismiss due to the insufficiency of the language contained in those counts.

3. One of the Smith–Obiri family's dogs died as a result of being shot.

4. Bruce Poole's case is not part of the appeal currently before this Court.

5. A motion to dismiss was made by Ms. Sulick, challenging the constitutionality of W. Va.Code § 61–6–21, which was denied by the circuit court. On June 2, 2010, Ms. Sulick filed a petition for a writ of prohibition with this Court

again challenging the constitutionality of § 61–6–21. Her petition was refused on June 7, 2010.

6. Ms. Sulick was found guilty of the following three counts:

### COUNT ONE

#### Civil Rights Violation

That KENDRA N. SULICK between the —— day of December 2007 and the —— day of June 2008, in the County of Berkeley, State of West Virginia, did unlawfully, intentionally, willfully and feloniously, by force or threat of force, willfully injure, intimidate or interfere with, or attempt to injure, intimidate or interfere with, or oppress or threaten any other person in the free exercise or enjoyment of any right or privilege secured to him or her by the Constitution or laws of the state of West Virgi-

ment of acquittal. At a hearing held August 9, 2010, the circuit court denied the motions. Ms. Sulick's case proceeded to sentencing on November 29, 2010, wherein she was sentenced to a determinate term of two years in the state penitentiary for each of her three convictions. The sentences were ordered to be served consecutively, but were suspended for a period of five years of supervised probation,[7] with credit for time served. Additionally, Ms. Sulick's sentence included anger management counseling, drug and alcohol counseling, two hundred hours of community service, restitution and court costs, as well as the restriction that she not be within one hundred yards of the Smith–Obiri family. Ms. Sulick appeals to this Court and asserts numerous assignments of error that will be discussed herein.

## II.

### STANDARD OF REVIEW

This case comes before this Court on appeal from a sentencing order. We previously have explained our standard of reviewing sentencing orders as follows: "The Supreme Court of Appeals reviews sentencing orders ... under a deferential abuse of discretion standard, unless the order violates statutory or constitutional commands." Syllabus pt. 1, in part, *State v. Lucas*, 201 W.Va. 271, 496 S.E.2d 221 (1997). In particular to the current case, in which Ms. Sulick challenges a statute based on alleged constitutional infirmities, we have explained that,

[i]n considering the constitutionality of a legislative enactment, courts must exercise due restraint, in recognition of the principle of the separation of powers in government among the judicial, legislative and executive branches. Every reasonable construction must be resorted to by the courts in order to sustain constitutionality, and any reasonable doubt must be resolved in favor of the constitutionality of the legislative enactment in question. Courts are not concerned with questions relating to legislative policy. The general powers of the legislature, within constitutional limits, are almost plenary. In considering the

---

nia or by the Constitution or laws of the United States, because of such other person's race, color, religion, ancestry, national origin, political affiliation or sex, to wit: did harass and attempt to intimidate Brian Smith and Betty Ann Obiri's [sic] and their six year old child, I.S., while they walked to, or waited for, the school bus, by the use of racial slurs, profanities and obscene gestures, because of Mr. Smith's and Ms. Obiri's race or color, in violation of Chapter 61, Article 6, Section 2l(b) of the Code of West Virginia, as amended, against the peace and dignity of the State.

#### COUNT SIX

#### Civil Rights Violation

That KENDRA N. SULICK on or about the —— day of September, 2008, in the County of Berkeley, State of West Virginia, did unlawfully, intentionally, willfully and feloniously, by force or threat of force, willfully injure, intimidate or interfere with, or attempt to injure, intimidate or interfere with, or oppress or threaten any other person in the free exercise or enjoyment of any right or privilege secured to him or her by the Constitution or laws of the state of West Virginia or by the Constitution or laws of the United States, because of such other person's race, color, religion, ancestry, national origin, political affiliation or sex, to wit: called Betty Ann Obiri a racial slur and made obscene, hostile and threatening gestures toward Ms. Obiri as she sat on the steps of her home with her children, because of Ms. Obiri's race or color, in violation of Chapter 61, Article 6, Section 2l(b) of the Code of West Virginia, as amended, against the peace and dignity of the State.

#### COUNT EIGHT

#### Civil Rights Violation

That KENDRA N. SULICK on or about the —— day of October 2008, in the County of Berkeley, State of West Virginia, did unlawfully, intentionally, willfully and feloniously, by force or threat of force, willfully injure, intimidate or interfere with, or attempt to injure, intimidate or interfere with, or oppress or threaten any other person in the free exercise or enjoyment of any right or privilege secured to him or her by the Constitution or laws of the state of West Virginia or by the Constitution or laws of the United States, because of such other person's race, color, religion, ancestry, national origin, political affiliation or sex, to wit: called Betty Ann Obiri a racial slur as Ms. Obiri walked to her mailbox, because of Ms. Obiri's race or color, in violation of Chapter 61, Article 6, Section 21(b) of the Code of West Virginia, as amended, against the peace and dignity of the State.

7. Ms. Sulick's probation subsequently was revoked by order entered May 18, 2011, following her admission to pleading guilty to a Driving Under the Influence offense committed while she was on probation.

constitutionality of an act of the legislature, the negation of legislative power must appear beyond reasonable doubt. Syl. pt. 1, *State ex rel. Appalachian Power Co. v. Gainer,* 149 W.Va. 740, 143 S.E.2d 351 (1965). Moreover, because this case requires a review of a statute, we are cognizant of the well-settled principle that " '[w]here the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review.' Syllabus point 1, *Chrystal R.M. v. Charlie A.L.,* 194 W.Va. 138, 459 S.E.2d 415 (1995)." Syl. pt. 1, *State v. Paynter,* 206 W.Va. 521, 526 S.E.2d 43 (1999). Additional standards of review that are pertinent to specific arguments will be set forth when relevant. Mindful of these guidelines, we will consider the arguments set forth by the parties.

## III.

## DISCUSSION

On appeal to this Court, Ms. Sulick sets forth several assignments of error. First, Ms. Sulick argues that there was insufficient evidence to prove that she committed the acts complained of, and, further, that the evidence failed to prove that the acts met the requirements of the statute.[8] Second, the contention is made that W. Va.Code § 61–6–21 is unconstitutional both for vagueness and for allowing the imposition of a disproportionate sentence as compared to the offense charged.[9] Third, Ms. Sulick sets forth her

8. In this regard, Ms. Sulick argues that her motions for acquittal made during trial and post trial should have been granted.

9. Ms. Sulick formerly advanced this argument in a motion to dismiss, which the circuit court denied.

10. Attendant to this controversy, Ms. Sulick states that her motion for arrest of judgement should have been granted by the trial court.

11. We wish to commend Ms. Sulick's counsel, Mr. Prezioso, for his vigorous trial defense, his proposed syllabus points, as well as the thoroughness of his research, briefs, and argument before this Court.

12. Article III, Section 10 of the West Virginia Constitution provides that "[n]o person shall be deprived of life, liberty, or property, without due process of law, and the judgment of his peers." This provision is a corollary to the applicable

opinion that the three counts of which she was convicted failed to charge conduct that is violative of the statute.[10] Finally, Ms. Sulick avers that the trial court should have granted her motion for a new trial. In response, the State indicates that the statute upon which Ms. Sulick was convicted, W. Va.Code § 61–6–21(b), is constitutional as it is not void for vagueness and does not provide for a punishment grossly disproportionate to the offense. Further, the State submits that the jury had before it sufficient evidence upon which to convict Ms. Sulick of the indicted charges pursuant to the statute.

While Ms. Sulick styles her petition as four separate assignments of error,[11] all of the issues are disposed of through an analysis of the constitutionality, construction, and application of the relevant statute. Our review will address the constitutionality of W. Va. Code § 61–6–21. This constitutional analysis will necessarily involve the construction of the statute. Then, our attention will turn to application of the statute to the particular facts of this case.

### A. Constitutionality and Construction of W. Va.Code § 61–6–21(b) (1987) (Repl.Vol.2010)

■ Ms. Sulick's argument against the constitutionality of W. Va.Code § 61–6–21(b) is twofold: first, she argues that it is void for vagueness because it violates Article III, Section 10 of the West Virginia Constitution [12] and the Fourteenth Amendment of the United States Constitution;[13] second, Ms. Sulick

provision of the Fourteenth Amendment of the United States Constitution.

13. To the extent that Ms. Sulick's argument relates to the charges contained within the indictment, we summarily reject the notion that it was unconstitutionally vague. First, we recognize that any objections to the indictment must have been raised prior to trial. *See* Syl. pt. 1, *State v. Miller,* 197 W.Va. 588, 476 S.E.2d 535 (1996) ("Rule 12(b)(2) of the West Virginia Rules of Criminal Procedure requires that a defendant must raise any objection to an indictment prior to trial. Although a challenge to a defective indictment is never waived, this Court literally will construe an indictment in favor of validity where a defendant fails timely to challenge its sufficiency. Without objection, the indictment should be upheld unless it is so defective that it does not, by any reasonable construction, charge an offense under West Virginia law or for which the defendant was convicted."). Further, we ex-

contends that the statute allows for a sentence that is grossly disproportionate to the character and degree of offenses sought to be prosecuted in disregard of Article III, Section 5 of the West Virginia Constitution [14] and the Eighth Amendment of the United States Constitution. Conversely, the State opines that the statute is constitutional in that it puts a reasonable person on notice of the elements thereof, and, further, that the sentence imposed was within statutory confines and was not based on any impermissible factor.

■ This Court has had previous occasion to address purported vagueness of a criminal statute. In so doing, we held that " '[a] criminal statute must be set out with sufficient definiteness to give a person of ordinary intelligence fair notice that his contemplated conduct is prohibited by statute and to provide adequate standards for adjudication.' Syllabus Point 1, *State v. Flinn,* 158 W.Va. 111, 208 S.E.2d 538 (1974)." Syl. pt. 1, *State v. Bull,* 204 W.Va. 255, 512 S.E.2d 177 (1998). *See also* Syl. pt. 1, *State ex rel. Myers v. Wood,* 154 W.Va. 431, 175 S.E.2d 637 (1970) ("There is no satisfactory formula to decide if a statute is so vague as to violate the due process clauses of the State and Federal Constitutions. The basic requirements are that such a statute must be couched in such language so as to notify a potential offender of a criminal provision as to what he should avoid doing in order to ascertain if he has violated the offense provided and it may be couched in general language.").

Importantly, "[w]hen the constitutionality of a statute is questioned every reasonable construction of the statute must be resorted to by a court in order to sustain constitutionality, and any doubt must be resolved in favor of the constitutionality of the legislative enactment." Syl. pt. 3, *Willis v. O'Brien,* 151 W. Va. 628, 153 S.E.2d 178 (1967). This Court also has observed that "[t]here is a presumption of constitutionality with regard to legislation." Syl. pt. 6, in part, *Gibson v. W. Va. Dep't of Highways,* 185 W.Va. 214, 406 S.E.2d 440 (1991). Moreover, we have recognized that there are different levels of scrutiny involved when a criminal statute is challenged on an issue of constitutional vagueness. *See* Syl. pt. 2, *Flinn,* 158 W.Va. 111, 208 S.E.2d 538 ("Statutes involving a criminal penalty, which govern potential First Amendment freedoms or other similarly sensitive constitutional rights, are tested for certainty and definiteness by interpreting their meaning from the face of the statute."); *see also* Syl. pt. 3, *Flinn, id.* ("Criminal statutes, which do not impinge upon First Amendment freedoms or other similarly sensitive constitutional rights, are tested for certainty and definiteness by construing the statute in light of the conduct to which it is applied.").

■ Therefore, the language of the statute must be clear so that an ordinary person is on notice of what acts must be avoided. Turning to the case presently before this Court, we determine that the statute is sufficiently definite to give a person of ordinary intelligence fair notice that his or her contemplated conduct is prohibited by statute. The pertinent language of W. Va.Code § 61–6–21(b) (1987) (Repl.Vol.2010) states as follows:

ercise a *de novo* review of such issues. *See* Syl. pt. 2, *id.* ("Generally, the sufficiency of an indictment is reviewed *de novo.* An indictment need only meet minimal constitutional standards, and the sufficiency of an indictment is determined by practical rather than technical considerations."). Finally, we find that the indictment fairly identified the statute involved and adequately notified Ms. Sulick of the offenses with which she was charged. *See* Syl. pt. 3, *State v. Hall,* 172 W.Va. 138, 304 S.E.2d 43 (1983) ("An indictment for a statutory offense is sufficient if, in charging the offense, it substantially follows the language of the statute, fully informs the accused of the particular offense with which he is charged and enables the court to determine the statute on which the charge is based.").

**14.** The West Virginia Constitution, Article III, Section 5, sets forth that

[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted. Penalties shall be proportioned to the character and degree of the offence. No person shall be transported out of, or forced to leave the state for any offence committed within the same; nor shall any person, in any criminal case, be compelled to be a witness against himself, or be twice put in jeopardy of life or liberty for the same offence.

This provision mirrors the proportionality language of the Eighth Amendment to the United States Constitution.

(b) If any person does by force or threat of force, willfully injure, intimidate or interfere with, or attempt to injure, intimidate or interfere with, or oppress or threaten any other person in the free exercise or enjoyment of any right or privilege secured to him or her by the Constitution or laws of the State of West Virginia or by the Constitution or laws of the United States, because of such other person's race, color, religion, ancestry, national origin, political affiliation or sex, he or she shall be guilty of a felony, and, upon conviction, shall be fined not more than five thousand dollars or imprisoned not more than ten years, or both.

■ As a general rule, we have held that "questions of law and interpretations of statutes and rules are subject to a *de novo* review." Syl. pt. 1, in part, *State v. Duke*, 200 W.Va. 356, 489 S.E.2d 738 (1997). In our analysis of statutes, we have explained that the first step is to identify the intent expressed by the Legislature in promulgating the provision at issue. "The primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syl. pt. 1, *Smith v. State Workmen's Comp. Comm'r*, 159 W.Va. 108, 219 S.E.2d 361 (1975). Then, we study the particular language used by the Legislature. "Where the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation." Syl. pt. 2, *State v. Elder*, 152 W.Va. 571, 165 S.E.2d 108 (1968). *See also* Syl. pt. 5, *State v. Gen. Daniel Morgan Post No. 548, Veterans of Foreign Wars*, 144 W.Va. 137, 107 S.E.2d 353 (1959) ("When a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute."); Syl. pt. 2, *State v. Epperly*, 135 W.Va. 877, 65 S.E.2d 488 (1951) ("A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect.").

■ Ms. Sulick highlights that the words "force or threat of force" are undefined by the statute as supportive of her argument for vagueness. However, we note that there are instances, such as the present one, where the language used by the Legislature may be plain but where it has failed to define a certain word or phrase. "In the absence of any definition of the intended meaning of words or terms used in a legislative enactment, they will, in the interpretation of the act, be given their common, ordinary and accepted meaning in the connection in which they are used." Syl. pt. 1, *Miners in Gen. Group v. Hix*, 123 W.Va. 637, 17 S.E.2d 810 (1941), *overruled, in part, on other grounds by Lee–Norse Co. v. Rutledge*, 170 W.Va. 162, 291 S.E.2d 477 (1982). *See also* Syl. pt. 6, in part, *State ex rel. Cohen v. Manchin*, 175 W.Va. 525, 336 S.E.2d 171 (1984) ("Undefined words and terms used in a legislative enactment will be given their common, ordinary and accepted meaning."). Importantly,

[i]t is the duty of a court to construe a statute according to its true intent, and give to it such construction as will uphold the law and further justice. It is as well the duty of a court to disregard a construction, though apparently warranted by the literal sense of the words in a statute, when such construction would lead to injustice and absurdity.

Syl. pt. 2, *Click v. Click*, 98 W.Va. 419, 127 S.E. 194 (1925).

The focus of the parties' dispute herein is the meaning of the words "force or threat of force" contained within W. Va.Code § 61–6–21(b). Ms. Sulick maintains that the phrase, as undefined, lends support to her argument that the statute is unconstitutionally vague. On the other hand, the State accounts for the lack of a statutory definition by means of resorting to the common and ordinary meaning of the words in the phrase. We agree with the State's argument that these terms should be afforded their common, ordinary, and everyday meanings.

The ordinary meaning ascribed to the word "force" is "[p]ower, violence, or pressure directed against a person or thing[ ]" and "[t]o compel by physical means or by legal requirement[.]" Black's Law Dictionary 717–18 (9th ed.2004). The word "threat" is defined as "[a] communicated intent to inflict harm or loss on another or on another's property, esp. one that might di-

minish a person's freedom to act voluntarily or with lawful consent[.]" *Id.* at 1618. Thus, it is clear that the terms "force" and "threat of force" are definite in prohibiting the use of physical means, a communicated intent, or pressure to inflict harm or loss on another or on another person's property. Such language is clear and provides notice to the ordinary person of what acts must be avoided to prevent criminal prosecution.

Accordingly, we hold that W. Va.Code § 61–6–21(b) (1987) (Repl.Vol.2010) is not unconstitutionally vague and does not violate the United States Constitution Amendment XIV, Section 1, or the West Virginia Constitution Article III, Section 10. Further, pursuant to W. Va.Code § 61–6–21(b) (1987) (Repl.Vol.2010) the terms "force" and "threat of force" are afforded their common, ordinary, everyday meaning. The words are clear in prohibiting the use of either physical means or a communicated intent to inflict harm or loss on another or on another person's property. Thus, the circuit court's underlying rulings in these regards are affirmed.

While we have concluded that the relevant statute is not unconstitutional on the basis of vagueness, we must still address Ms. Sulick's contention that the statute allows for a sentence that is grossly disproportionate to the character and degree of offenses sought to be prosecuted in disregard of Article III, Section 5 of the West Virginia Constitution and the Eighth Amendment of the United States Constitution.

■ At the outset, we note the general rule that "[s]entences imposed by the trial court, if within statutory limits and if not based on some [im]permissible factor, are not subject to appellate review." Syl. pt. 4, *State v. Goodnight,* 169 W.Va. 366, 287 S.E.2d 504 (1982). In the present case, the record does not suggest, and Ms. Sulick does not argue, that the trial court relied on any impermissible factors in arriving at her sentence. Instead, Ms. Sulick maintains that her sentence is disproportionate to the crime committed.

When previously asked to review sentences as being disproportionate, this Court has determined that these claims generally are limited to sentences that have no maximum limit provided by statute. In Syllabus

point 4 of *Wanstreet v. Bordenkircher,* 166 W.Va. 523, 276 S.E.2d 205 (1981), we stated: "While our constitutional proportionality standards theoretically can apply to any criminal sentence, they are basically applicable to those sentences where there is either no fixed maximum set by statute or where there is a life recidivist sentence." In Syllabus point 8 of *State v. Vance,* 164 W.Va. 216, 262 S.E.2d 423 (1980), we recognized: "Article III, Section 5 of the West Virginia Constitution, which contains the cruel and unusual punishment counterpart to the Eighth Amendment of the United States Constitution, has an express statement of the proportionality principle: 'Penalties shall be proportioned to the character and degree of the offence.' "

■ In the present case, Ms. Sulick maintains that the sentence imposed upon her is excessive and disproportionate to the degree and character of her offense. We disagree. Ms. Sulick was convicted by a jury of three counts of violating the statute. She could have received a sentence of ten years per violation. Instead, the lower court sentenced her to a term of two years per count, at the lower end of the allowable punishment. While the lower court chose to order that the sentences be served consecutively, such decision was within the circuit court's discretion. Moreover, the sentence was suspended, and she received probation. The record does not show that the circuit court relied on any impermissible factors in fixing the appropriate sentence. Thus, there was no abuse of discretion by the circuit court in the imposition of Ms. Sulick's sentence and the terms will not be disturbed by this Court.

Having determined that W. Va.Code § 61–6–21(b) is constitutional on both vagueness and proportionality claims, and, further, having applied common, ordinary, and everyday meanings to undefined terms within the statute, we will now turn our attention to the application of the statute to the case presently pending before this Court.

### B. Application of W. Va.Code § 61–6–21(b) (1987) (Repl.Vol.2010)

■ Before this Court, Ms. Sulick avers that the evidence was insufficient to show that she was guilty of the crimes alleged. As

counterparts to this argument, Ms. Sulick also alleges that her conduct did not rise to the level of conduct that is by force or threat of force as required by the statute and contends that there was insufficient proof to show that her conduct was motivated by an improper racial bias.[15] The State relies on the fact that the jury heard the evidence and was able to convict Ms. Sulick on three of the charged counts. As argued by the State, the witnesses' testimony provided the jury sufficient evidence to make its determination, and the jury's verdict should not be set aside by this Court.

■■■■ We have provided guidance in the following:

> The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

Syl. pt. 1, *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995). Further,

> [a] criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally,

a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. To the extent that our prior cases are inconsistent, they are expressly overruled.

Syl. pt. 3, *id.*

A review of the evidence adduced at trial results in this Court's determination that sufficient evidence existed to support the jury's conviction of Ms. Sulick. While several witnesses were called on behalf of both parties, the main testimony was elicited from Ms. Obiri. During the trial, Ms. Obiri testified that Ms. Sulick drove by a bus stop where Ms. Obiri and her children were waiting and called them "f* * *ing n* * *ers." They were the only black family at the bus stop. Another bus stop incident occurred when Ms. Sulick drove at a high rate of speed near where Ms. Obiri's son was standing. The son jumped into the grass and gravel landed on Ms. Obiri's car.

Ms. Obiri also testified to events that occurred at or near her home. For example, Ms. Sulick did "donuts" on her all-terrain vehicle near Ms. Obiri's yard for twenty to twenty-five minutes until the police arrived. Additionally, late one evening, Ms. Obiri heard a chainsaw start and Ms. Sulick said "f* * *ing n* * *ers, if you don't like it you can leave, f* * *ing n* * *ers." On another instance, Ms. Obiri and her children were in their yard when Ms. Sulick drove by, stopped, gave them "the finger," and yelled "you f* * *ing n* * *ers." Another similar incident occurred when Ms. Sulick drove by Ms. Obiri's house at a high rate of speed, stopped, revved her car, and kicked gravel into the yard. Ms. Obiri complained, and Ms. Sulick gave her "the finger." Finally, Ms. Obiri testified that she was walking to her mailbox when Ms. Sulick drove by and

---

**15.** Ms. Sulick additionally argues that the prosecutor made improper comments during opening and closing arguments such that the jury was inflamed and prejudiced against her. While Ms. Sulick claims that the State sought to introduce improper 404(b) evidence, the State responds that references to racial slurs and vulgarities were appropriate in a case where Ms. Sulick's bias against the Smith–Obiri family's race had to be proved. After reviewing the record, we reject Ms. Sulick's argument. Even if the comments were inappropriate, we fail to determine how, in light of the other evidence adduced at trial, Ms. Sulick was prejudiced by any such impropriety. *See* Syl. pt. 5, *State v. Ocheltree*, 170 W.Va. 68, 289 S.E.2d 742 (1982) ("A judgment of conviction will not be reversed because of improper remarks made by a prosecuting attorney to a jury which do not clearly prejudice the accused or result in manifest injustice.").

swerved her car toward Ms. Obiri.[16] Accordingly, there was sufficient evidence in this case for a jury to find that Ms. Sulick, by force or threat of force, interfered with the Smith–Obiri family's free exercise or enjoyment of their home because of their race/color. Ms. Sulick argues that there is no evidence that her conduct was racially motivated. Based on the totality of the evidence, we disagree.

Finally, we note Ms. Sulick's assertion that the three counts on which she was convicted do not fit within the statutory section with which she was charged. As explained earlier, Ms. Sulick was tried on nine alleged violations of W. Va.Code § 61–6–21(b). She was acquitted on six of the charges and found guilty of three of the claims. Ms. Sulick contends that the jury verdict was improper as it found her guilty of three claims that are void of any allegations of the use of force or a threat of force; however, the charging statute requires that the conduct is by force or threat of force.

We agree with Ms. Sulick's argument that W. Va.Code § 61–6–21(b) is not a statute aimed at preventing hate speech. For example, as explained by Ms. Sulick, racial slurs, profanities, and obscene gestures, while reprehensible, are not hate crimes punishable under the statute unless the racially-charged language or gestures involve the use of force or threat of force. While Ms. Sulick acknowledges that some of the indictment charges included actions involving the use of force or threat of force, she maintains that she was acquitted of all such charges and, further, that the three counts for which she was convicted were void of any allegation of the use of force or threat of force.

It is not for this Court to speculate as to what factors influenced the jury's decisions as to which alleged counts should result in an acquittal and which counts should result in a conviction. Ms. Sulick argues that the three counts of which she was convicted were void of any allegation of the use of force or threat of force. However, a fair reading of the indictment counts reveals that Count 1 alleges that Ms. Sulick "did harass and attempt to intimidate Brian Smith and Betty Ann Obiri's [sic] and their six year old child, I.S., while they walked to, or waited for, the school bus, by the use of racial slurs, profanities and obscene gestures, because of Mr. Smith's and Ms. Obiri's race or color." Count 6 alleges that Ms. Sulick "called Betty Ann Obiri a racial slur and made obscene, hostile and threatening gestures toward Ms. Obiri as she sat on the steps of her home with her children, because of Ms. Obiri's race or color." Finally, Count 8 states that Ms. Sulick "called Betty Ann Obiri a racial slur as Ms. Obiri walked to her mailbox, because of Ms. Obiri's race or color[.]" The trial testimony of Ms. Obiri stated that Ms. Sulick swerved her car toward her during this incident and that she felt threatened.

■ Taking into account all of the evidence presented, we find that these counts are sufficient to meet the statutory mandates in light of the pleadings, the evidence, the jury charge, and all other relevant matters. The jury's acquittal on any counts cannot affect the validity of the guilty verdicts on other counts. We have previously recognized that events can be connected in such a way that they can be viewed as one incident or scheme. Specifically,

> [a] defendant shall be charged in the same indictment, in a separate count for each offense, if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character, or are based on the same act or transaction, or are two or more acts or transactions connected together or constituting parts of a common scheme or plan. Syl. Pt. 1, *State ex rel. Watson v. Ferguson*, 166 W.Va. 337, 274 S.E.2d 440 (1980) [ (*superseded by rule on other grounds* ) ].

Syl. pt. 8. *State ex rel. Games–Neely v. Sanders*, 211 W.Va. 297, 565 S.E.2d 419 (2002). Therefore, the jury could have determined that all of the evidence connected the acts together as a common scheme or plan, and it is not within the province of this Court to question why the jury returned different decisions on the counts charged. Accordingly,

---

**16.** We note that Ms. Obiri's testimony was that Ms. Sulick swerved her car at Ms. Obiri as Ms. Obiri was walking to her mailbox. However, the indictment charged Ms. Sulick with calling Ms. Obiri a racial slur as Ms. Obiri was walking to her mailbox.

the lower court's rulings in this regard are affirmed.

## IV.

### CONCLUSION

In view of the foregoing, we affirm the judgment convicting and sentencing Ms. Sulick for the crimes set out herein.

Affirmed.