438 S.E.2d 605

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Thomas J. BLAIR, III, Defendant Below, Appellant.**

**No. 21558.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 21, 1993.

Decided Dec. 14, 1993.

---

David Burton, Burton & Kilgore, Princeton, James C. West, Jr., West & Jones, Clarksburg, for appellant.

Darrell V. McGraw, Jr., Atty. Gen., Shirley A. Skaggs, Sr. Asst. Atty. Gen., Charleston, for appellee.

McHUGH, Justice:

This case is before the Court upon the appeal of Thomas J. Blair from the June 5, 1992 order of the Circuit Court of McDowell County which stated that a jury found the appellant guilty on seven criminal misdemeanor warrants for violating *W.Va.Code*, 24–3–1 [1923]. The appellant was fined $500.00 and sentenced to serve ninety days home confinement on each count, to run concurrently. For reasons set forth below, we reverse the circuit court's order.

## I

The appellant is the President of McDowell County Water Company (hereinafter the Water Company), a private corporation which is regulated by the Public Service Commission. The warrants brought against the appellant by customers of the Water Company charged that the appellant failed to "establish and maintain adequate and suitable facilities for customers, in violation of Chapter 24–3–1 of the West Virginia Code, with penalties being found under Chapter 24–4–1 of the West Virginia Code." [1]

Initially, the case was tried before a magistrate without a jury. The magistrate found the appellant guilty on all seven charges, even though the appellant states that only five of the seven complaining witnesses appeared and testified before the magistrate. The appellant appealed the magistrate's decision to the circuit court which impaneled a jury to try all seven warrants.

The record before us indicates that the Water Company had serious financial problems. Evidently, the problems began in 1987 with the bankruptcy of the Olga Coal Compa-

---

1. The warrants do not all read the same; however, the above quote from one of the warrants is a good example of what each warrant stated.

ny. The Olga Coal Company had pumped the water for the Water Company free of charge. Furthermore, the Water Company had filed for a rate increase in June of 1989; however, the Public Service Commission had put that on hold. Eventually, the Water Company was put into involuntary receivership in November of 1989. The appellant stated that he was financially unable to fix the problem since the banks would not lend him the money.

At trial the seven complaining witnesses testified that sometimes the water would not run at all, and if it did, it was oily and rusty. One witness complained that there were worms in the water. Another witness testified that there was debris in the water such as sticks. The witnesses all stated that the water was not safe to drink.

Wanda Mercer testified that she and Foster Munsey, both of whom owned stock in the Water Company, were responsible for the day-to-day operation of the Water Company. Ms. Mercer stated that she had received complaints about the water. She also stated that she would not drink the water.

The county sanitarian, Joseph Leffman, who works for the McDowell County Health Department, testified that he tested the water on three occasions in July of 1989 and found that the water had no chlorine. He stated that the water had an oily, rusty appearance.

Michael Lawson, an engineer from Beckley, testified that the appellant asked him for help with the water company in 1985. Mr. Lawson volunteered to assess the system and stated that he was amazed by how well the company did with such old equipment. He also stated that the only way to take care of the problem would be to put a new system in which would cost two to three million dollars. Mr. Lawson testified that although the appellant appreciated the problem, there was nothing he could do about it.

## II

We first address the appellant's contention that his convictions under *W.Va.Code*, 24-3-1 [1923] should be reversed on the ground that the statute is unconstitutionally vague. We agree with the appellant's contention.

*W.Va.Code*, 24-3-1 [1923][2] states, in pertinent part, that:

[e]very public utility subject to this chapter shall establish and maintain adequate and suitable facilities, safety appliances or other suitable devices, and shall perform such service in respect thereto as shall be reasonable, safe and sufficient for the security and convenience of the public, and the safety and comfort of its employees, and in all respects just and fair, and without any unjust discrimination or preference.

The appellant's argument is that the above language in *W.Va.Code*, 24-3-1 [1923] does not provide adequate standards for adjudication or set forth with sufficient definiteness the specific acts which are prohibited. Therefore, he asserts that *W.Va.Code*, 24-3-1 [1923] is unconstitutionally vague which violates the *West Virginia Constitution*, art. III, §§ 10 and 14.[3]

---

2. The penalty section for Chapter 24 of the *W.Va. Code* is found at *W.Va.Code*, 24-4-1 [1923], and it states, in pertinent part, that

[e]very officer, agent, employee, or stockholder of any public utility subject to the provisions of this chapter, and every patron, passenger, shipper or consignee, or other person, who shall violate any provision of this chapter, or who procures, aids or abets any violation of any such provision by any such public utility shall be guilty of a misdemeanor, and, upon conviction thereof, shall be fined not more than one thousand dollars or be confined in jail not more than one year, or both, in the discretion of the court.

3. *W.Va. Const.* art. III, § 10 states: "No person shall be deprived of life, liberty, or property,

without due process of law, and the judgment of his peers."

*W.Va. Const.* art. III, § 14 states:

Trials of crimes, and misdemeanors, unless herein otherwise provided, shall be by a jury of twelve men, public, without unreasonable delay, and in the county where the alleged offence was committed, unless upon petition of the accused, and for good cause shown, it is removed to some other county. In all such trials, the accused shall be fully and plainly informed of the character and cause of the accusation, and be confronted with the witness against him, and shall have the assistance of counsel, and a reasonable time to prepare for his defence; and there shall be awarded to him compulsory process for obtaining witnesses in his favor.

We have noted that the "vagueness standard is well settled[.]" *State v. Less,* 170 W.Va. 259, 263, 294 S.E.2d 62, 66 (1981). In syllabus point 1 of *State v. Flinn,* 158 W.Va. 111, 208 S.E.2d 538 (1974) we stated: "A criminal statute must be set out with sufficient definiteness to give a person of ordinary intelligence fair notice that his contemplated conduct is prohibited by statute and to provide adequate standards for adjudication." *See also State v. DeBerry,* 185 W.Va. 512, 408 S.E.2d 91, *cert. denied,* — U.S. —, 112 S.Ct. 592, 116 L.Ed.2d 616 (1991), and *State v. Less, supra.* We have also noted that:

> [t]here is no satisfactory formula to decide if a statute is so vague as to violate the due process clauses of the State and Federal Constitutions. The basic requirements are that such a statute must be couched in such language so as to notify a potential offender of a criminal provision as to what he should avoid doing in order to ascertain if he has violated the offense provided and it may be couched in general language.

Syl. pt. 1, *State ex rel. Myers v. Wood,* 154 W.Va. 431, 175 S.E.2d 637 (1970). Furthermore, "[c]riminal statutes, which do not impinge upon First Amendment freedoms or other similarly sensitive constitutional rights, are tested for certainty and definiteness by construing the statute in light of the conduct to which it is applied." Syl. pt. 3, *State v. Flinn, supra.*

In *State v. Flinn,* this Court found that the following definitions of delinquent child in *W.Va.Code,* 49-1-4 [1931] were unconstitutionally vague: "(7) associate with immoral or vicious persons;" and "(9) deport himself so as to wilfully injure or endanger the morals or health of himself or others." *Id.* at 129, 208 S.E.2d at 548. This Court found

that the above phrases were so broad and subjective that "there [was] an inherent danger that a trial court could not keep purely subjective standards out of the consideration of juries." *Id.* at 130, 208 S.E.2d at 549.

Likewise, in the case before us the language in *W.Va.Code,* 24-3-1 [1923] is broad and subjective. What is "maintain[ing] adequate and suitable facilities"? What is "perform such service ... as shall be reasonable, safe and sufficient for the security and convenience of the public, and the safety and comfort of its employees"? It would not be until after the trial before anyone would be able to answer the above questions, and the answer would depend on the jury's subjective interpretation of what is adequate or safe.[4]

The State argues that by using statutory interpretation aids discussed in *Flinn,* 158 W.Va. at 125, 208 S.E.2d at 546, the general terms of the statute can be made permissibly certain. For instance, one can look to the "common understanding and practice" or to the "ordinary commercial knowledge." *Id.* However, we disagree with the State. *W.Va. Code,* 24-3-1 [1923] does not provide any standard by which the jury can determine what is safe and adequate water service, and the jury's subjective knowledge of "ordinary commercial knowledge" would vary. We agree that in the case before us the water conditions were not satisfactory; however, a statute cannot be constitutional in one case and unconstitutional in another. *W.Va.Code,* 24-3-1 [1923] potentially could be used to criminally penalize a water company for not providing a state-of-the-art water system.[5]

Accordingly, we hold that *W.Va.Code,* 24-3-1 [1923] is unconstitutionally vague in violation of *W.Va. Const.* art. III, §§ 10 and 14 because the language "establish and main-

---

4. The State points out that *W.Va.Code,* 24-3-1 [1923] has been used in other cases to establish liability. *E.g., Reed v. Smith Lumber Co.,* 165 W.Va. 415, 268 S.E.2d 70 (1980); *Sommerville v. Pennsylvania Railroad Co.,* 151 W.Va. 709, 155 S.E.2d 865 (1967); and *State ex rel. Public Service Commission v. Willis,* 150 W.Va. 175, 144 S.E.2d 630 (1965). However, the cases cited by the State do not involve criminal charges. In syllabus point 2 of *State v. Brumfield,* 178 W.Va. 240, 358 S.E.2d 801 (1987) we stated: " 'Penal statutes must be strictly construed against the State and in favor of the defendant.' Syl. pt. 3,

*State ex rel. Carson v. Wood,* 154 W.Va. 397, 175 S.E.2d 482 (1970)."

5. We note that *W.Va.Code,* 16-1-9a [1987] does make it a misdemeanor for any entity to violate any provision of that section or certain regulation set forth by the state board of health regarding a public water system. However, the appellant was not charged with violating *W.Va.Code,* 16-1-9a [1987]. Therefore, since that issue is not before us, we decline to address it.

tain adequate and suitable facilities" and "perform such service ... as shall be reasonable, safe and sufficient for the security and convenience of the public, and the safety and comfort of its employees" does not provide adequate standards for adjudication or set forth with sufficient definiteness the specific acts which are prohibited.

## III

The appellant raises several other assignments of error. However, in light of our resolution of the first issue it is not necessary for us to address the remaining assignments of error.

## IV

Therefore, since *W.Va.Code*, 24–3–1 [1923] is unconstitutionally vague violating *W.Va. Const.* art. III, §§ 10 and 14, we reverse the jury verdict.

Reversed.