IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2021 Term

_____

No. 20-0234

_____

**FILED**
**March 15, 2021**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE OF WEST VIRGINIA,
Respondent,

v.

TIMOTHY MICHAEL CONNER, II,
Petitioner.

_____

Certified Questions from the Circuit Court of Monongalia County
The Honorable Susan B. Tucker, Judge
Criminal Action No. 20-F-105

CERTIFIED QUESTIONS ANSWERED

_____

Submitted: February 9, 2021
Filed: March 15, 2021

Jared T. Moore, Esq.                     Patrick Morrisey, Esq.
The Moore Law Firm, PLLC                 West Virginia Attorney General
Morgantown, West Virginia                Gordon L. Mowen, II, Esq.
Counsel for Petitioner                   Assistant Attorney General
                                         Counsel for Respondent

JUSTICE HUTCHISON delivered the Opinion of the Court.

**SYLLABUS BY THE COURT**

1.      "The appellate standard of review of questions of law and certified by a circuit court is *de novo*." Syl. Pt. 1, *Gallapoo v. Wal-Mart Stores, Inc.*, 197 W. Va. 172, 475 S.E.2d 172 (1996).

2.      "The constitutionality of a statute is a question of law which this Court reviews *de novo*." Syl. Pt. 1, *State v. Rutherford*, 223 W. Va. 1, 672 S.E.2d 137 (2008).

3.      "'When the constitutionality of a statute is questioned every reasonable construction of the statute must be resorted to by a court in order to sustain constitutionality, and any doubt must be resolved in favor of the constitutionality of the legislative enactment.' Syl. Pt. 3, *Willis v. O'Brien*, 151 W. Va. 628, 153 S.E.2d 178 (1967)." Syl. Pt. 3, *State v. James*, 227 W. Va. 407, 710 S.E.2d 98 (2011).

4.      "'A criminal statute must be set out with sufficient definiteness to give a person of ordinary intelligence fair notice that his contemplated conduct is prohibited by statute and to provide adequate standards for adjudication.' Syl. Pt. 1, *State v. Flinn*, 158 W. Va. 111, 208 S.E.2d 538 (1974)." Syl. Pt. 1, *State v. Blair*, 190 W. Va. 425, 438 S.E.2d 605 (1993).

5.      "Undefined words and terms in a legislative enactment will be given their common, ordinary and accepted meaning." Syl. Pt. 6, in part, *State ex rel. Cohen v. Manchin*, 175 W. Va. 525, 336 S.E.2d 171 (1984).

6.     Within the context of West Virginia Code § 60A-4-416(b) (2017), "[a]ny person who, while engaged in the illegal use of a controlled substance with another" means any individual who personally and illegally uses, takes, or otherwise consumes a controlled substance together with another, as well as any individual who provides or procures the controlled substance for, or sells the controlled substance to, another to illegally use, take, or otherwise consume.

7.     The phrase "seek medical assistance," within the context of West Virginia Code § 60A-4-416(b) (2017), means seek medical services of a health care professional licensed, registered, or certified under chapter thirty or chapter sixteen of the West Virginia Code acting within his or her lawful scope of practice.

**HUTCHISON, Justice**:

Following the death of his friend, Shane Cebulak, from a heroin overdose,

Petitioner Timothy Michael Connor, II, was charged with the felony offense of failure to

render aid, in violation of West Virginia Code § 60A-4-416(b) (2017). This Court is now

presented with the following certified questions from the Circuit Court of Monongalia

County, which arose as a result of petitioner's motion to dismiss the indictment against

him on the ground that the statute is unconstitutionally vague and, therefore, void:

> 1. Whether the following phrase in West Virginia Code §
>    60A-4-416(b) is unconstitutionally vague: "Any person
>    who, while engaged in the illegal use of a controlled
>    substance with another?"
>
> Circuit Court's Answer: *Yes.*
>
> 2. Whether the undefined phrase "seek medical assistance" in
>    the context of West Virginia Code § 60A-4-416(b) provides
>    an adequate standard for adjudication?
>
> Circuit Court's Answer: *No.*

For the reasons discussed below, we disagree with the answers of the circuit

court and conclude that the statute is constitutional.

## I. Factual and Procedural Background

On March 28, 2019, Mr. Cebulak picked up petitioner and drove to an

apartment complex in Morgantown. Mr. Cebulak went inside and purchased heroin while

petitioner remained in the vehicle. After purchasing the heroin, Mr. Cebulak returned to

1

the vehicle and drove them to the parking lot of another apartment complex. Mr. Cebulak then smoked the heroin. Petitioner denies partaking in the use of illegal substances.

According to petitioner, after Mr. Cebulak smoked the heroin, he began exhibiting signs that he was suffering an overdose. Petitioner proceeded to call an acquaintance, Joseph Choma, whom petitioner believed to be a nurse.[1] Petitioner asked Mr. Choma for help because he believed that Mr. Cebulak was experiencing an overdose. Mr. Choma informed petitioner that he was unable to help because he (Mr. Choma) was intoxicated and advised petitioner that he should drive Mr. Cebulak to a hospital. Petitioner informed Mr. Choma that he was on parole and would not call 9-1-1.[2] After speaking with petitioner, but before petitioner arrived with Mr. Cebulak, Mr. Choma called his girlfriend who, in turn, called 9-1-1 to report the overdose. Petitioner drove Mr. Cebulak to Mr. Choma's residence[3] and parked the vehicle in an alley nearby. Mr. Cebulak was still breathing when petitioner left him in the vehicle and went inside Mr. Choma's residence.[4]

---

[1] According to the testimony of Detective Zach Trump of the Morgantown Police Department, at the September 9, 2019, preliminary hearing, Mr. Choma is not, in fact, a nurse. Rather, "[h]e had a nursing class once." Petitioner does not dispute this testimony.

[2] Petitioner had previously been convicted of burglary and conspiracy. Petitioner feared that calling 9-1-1 would jeopardize his parole status.

[3] The circuit court noted that, "[w]hile driving Mr. Cebulak, [petitioner] drove by two hospitals, two fire departments, and one police department. He did not stop at any of these places."

[4] Mr. Choma disputes that petitioner went inside his residence.

2

The 9-1-1 dispatcher contacted Mr. Choma, who reported that a person was experiencing an overdose in a vehicle that was parked in an alley behind Mr. Choma's residence, that the person was slumped over the passenger seat, that he was breathing but appeared to be dying, and that the breathing sounded like snoring.[5] When Mr. Choma went outside to see if the vehicle was still there, it was gone. Emergency personnel arrived soon thereafter and, likewise, were unable to locate Mr. Cebulak or the vehicle.

Approximately two hours later, while out walking his dog, Mr. Choma discovered Mr. Cebulak in the vehicle parked in the alley. He called 9-1-1, informing the dispatcher that he did not believe Mr. Cebulak was breathing. Emergency personnel arrived and confirmed that Mr. Cebulak was deceased.[6]

On August 20, 2019, while petitioner was meeting with his parole officer, officers with the Morgantown Police Department questioned him about the events that transpired on March 28, 2019. Petitioner gave a statement and was thereafter arrested and

---

[5] Mr. Choma initially told the 9-1-1 dispatcher that he discovered Mr. Cebulak in his vehicle when he was outside taking out the trash. According to the police report, approximately one month after Mr. Cebulak's death, Mr. Choma went to the Morgantown Police Department to speak with detectives to advise them that "he had not told the truth in the beginning because he wanted to speak with an attorney first." Though not entirely clear from the record on appeal, it appears that Mr. Choma's description of Mr. Cebulak in the initial 9-1-1 call of Mr. Cebulak's condition was based upon what petitioner told him and that Mr. Choma never saw Mr. Cebulak alive in the vehicle.

[6] When Mr. Cebulak was found, his body was positioned with his head on the front passenger floorboard and with his feet elevated between the driver and passenger seats. His pants were partially down and his genitals were exposed.

charged with failing to render aid to Mr. Cebulak, a felony, in violation of West Virginia Code § 60A-4-416(b). The statute provides:

> Any person who, while engaged in the illegal use of a controlled substance with another, who knowingly fails to seek medical assistance for such other person when the other person suffers an overdose of the controlled substance or suffers a significant adverse physical reaction to the controlled substance and the overdose or adverse physical reaction proximately causes the death of the other person, is guilty of a felony and, upon conviction thereof, shall be imprisoned for not less than one year nor more than five years.

W. Va. Code § 60A-4-416(b). Petitioner was subsequently indicted by a Monongalia County Grand Jury on that charge.

On February 10, 2020, petitioner filed a motion to dismiss the indictment on the ground that West Virginia Code § 60A-4-416(b) is unconstitutionally vague because it fails to clearly define what type of conduct is prohibited and, further, requires application of a purely subjective standard thereby inviting arbitrary enforcement. Petitioner argued that the statute should be declared void because (1) the phrase "while engaged in the illegal use of a controlled substance with another" is subject to multiple interpretations, and (2) the statute's failure to define "seek medical assistance" is purely subjective.

A hearing on petitioner's motion to dismiss was conducted on February 21, 2020. Upon conclusion of the hearing, the circuit court held the motion in abeyance and, by Order of Certification entered on March 13, 2020, determined that certain aspects of

4

West Virginia Code § 60A-4-416(b) warranted the certification of two questions to this Court:

> 1. Whether the following phrase in West Virginia Code § 60A-4-416(b) is unconstitutionally vague: "Any person who, while engaged in the illegal use of a controlled substance with another?"
>
> 2. Whether the undefined phrase "seek medical assistance" in the context of West Virginia Code § 60A-4-416(b) provides an adequate standard for adjudication?

As to the first certified question, the court found that the statute is ambiguous regarding what circumstances must exist to constitute "using a controlled substance" within the meaning of the statute: "Specifically, does the statute apply to people personally *using* a controlled substance, or does it apply to those who are merely *physically present* when another is using a controlled substance?"[7] Thus, the court's order observed that "[t]he phrase 'Any person who, while engaged in the illegal use of a controlled substance with another,' as delineated in the statute, fails to give notice to a person under specific circumstances of what would make a person subject to punishment under the code section."

As to the second certified question, the circuit court's order stated that the phrase "seek medical assistance" as set forth in the statute is

> susceptible to differing subjective interpretations, which precludes the public from knowing what the law requires of

---

[7] The circuit court's order noted that the State has "acknowledged that it had no affirmative evidence that the Defendant was personally using a controlled substance while with Mr. Cebulak on March 28, 2019."

citizens of the State of West Virginia in similar circumstances. For example, does "seek medical assistance" mean calling 911, transporting the person in need of assistance to a medical facility, or some other specific behavior?

The circuit court determined that "seek medical assistance" in the context of West Virginia Code § 60A-4-416(b) does not provide an adequate standard for adjudication.

On May 1, 2020, the circuit court entered an agreed order indefinitely continuing the case pending this Court's ruling on the certified questions.

## II. Standard of Review

The certified questions before us involve a challenge to the constitutionality of a criminal statute. This Court has established that "[t]he appellate standard of review of questions of law and certified by a circuit court is *de novo*." Syl. Pt. 1, *Gallapoo v. Wal-Mart Stores, Inc.*, 197 W. Va. 172, 475 S.E.2d 172 (1996). Similarly, "[t]he constitutionality of a statute is a question of law which this Court reviews *de novo*." Syl. Pt. 1, *State v. Rutherford*, 223 W. Va. 1, 672 S.E.2d 137 (2008)." *Accord*, Syl. Pt. 2, *State v. James*, 227 W. Va. 407, 710 S.E.2d 98 (2011). Still, we evaluate the certified questions with caution, keeping in mind the importance of judicial restraint because a statute is presumed to be constitutional:

> "When the constitutionality of a statute is questioned every reasonable construction of the statute must be resorted to by a court in order to sustain constitutionality, and any doubt must be resolved in favor of the constitutionality of the legislative enactment." Syl. Pt. 3, *Willis v. O'Brien*, 151 W. Va. 628, 153 S.E.2d 178 (1967).

6

Syl. Pt. 3, *James*, 227 W. Va. at 410, 710 S.E.2d at 101. With these standards and considerations in mind, we proceed to answer the certified questions before us.

### III. Discussion

In this case, the Court is tasked with determining whether West Virginia Code § 60A-4-416(b) should be declared unconstitutionally vague and, therefore, void. "Claims of unconstitutional vagueness in criminal statutes are grounded in the constitutional due process clauses, *U.S. Const.* amend. XIV, Sec. 1, and *W.Va. Const.* art. III, Sec. 10." *State v. Bull*, 204 W. Va. 255, 261, 512 S.E.2d 177, 183 (1998).

> In explaining the "void for vagueness" doctrine, we have instructed that
>
> > "[a] criminal statute must be set out with sufficient definiteness to give a person of ordinary intelligence fair notice that his contemplated conduct is prohibited by statute and to provide adequate standards for adjudication." Syl. Pt. 1, *State v. Flinn*, 158 W. Va. 111, 208 S.E.2d 538 (1974).

Syl. Pt. 1, *State v. Blair*, 190 W. Va. 425, 438 S.E.2d 605 (1993). We also recognize that

> > "[t]here is no satisfactory formula to decide if a statute is so vague as to violate the due process clauses of the State and Federal Constitutions. The basic requirements are that such a statute must be couched in such language so as to notify a potential offender of a criminal provision as to what he should avoid doing in order to ascertain if he has violated the offense provided and it may be couched in general language." Syl. pt. 1, *State ex rel. Myers v. Wood*, 154 W. Va. 431, 175 S.E.2d 637 (1970).

Syl. Pt. 2, *Blair*, 190 W. Va. at 426, 438 S.E.2d at 606.

A.


The first certified question asks whether the phrase "[a]ny person who, while engaged in the illegal use of a controlled substance with another" in West Virginia Code § 60A-4-416(b) is unconstitutionally vague. Petitioner argues that the highlighted statutory language fails to adequately identify the category of persons to which it applies because it can be reasonably construed in two entirely different ways – that is, to apply to individuals who are using a controlled substance alongside or together with the individual who overdoses at the time the overdose occurs and to individuals who are not using a controlled substance but are merely physically present when the overdose occurs.[8] While petitioner does not necessarily disagree with the former interpretation, he argues that the latter would amount to "guilt by association," which is not contemplated in our criminal justice system and, further, is problematic because the statute does not define to what degree of physical proximity an individual must be to the overdoser in order for the individual to be charged with violating the statute.[9] Petitioner contends that the ambiguity in that portion of West Virginia Code § 60A-4-416(b) providing that "[a]ny person who, while engaged in the

---

[8] For simplicity, an individual who suffers an overdose of the controlled substance or suffers a significant adverse physical reaction to the controlled substance will hereinafter be referred to as "the overdoser."

[9] As an example, petitioner posits that an individual who is attending a concert or sporting event and is in some physical proximity to another spectator (potentially, a stranger) who suffers an overdose may be charged with violating West Virginia Code § 60A-4-416(b) if he or she fails to seek medical assistance for the overdoser.

8

illegal use of a controlled substance with another" creates such uncertainty in its meaning so as to render it unconstitutional.

The State disagrees with petitioner's position that "[a]ny person who, while engaged in the illegal use of a controlled substance with another" may be reasonably read to apply to an individual who is merely physically present at the time of the overdose of another and points out that the plain language of the statute simply does not support such a construction. Rather, the State argues that the plain and ordinary meaning of the challenged statutory language clearly and unambiguously encompasses individuals who are themselves illegally using controlled substances together with the overdoser. The State also contends that those who "make 'use'" of the controlled substance include those who provided, procured, or sold the controlled substance to the overdoser, and are present at the time of the overdose. The State contends that the challenged statutory language is not unconstitutionally vague.

We agree with the State that West Virginia Code § 60A-4-416(b) is sufficiently definite to give a person of ordinary intelligence fair notice that his or her contemplated conduct is prohibited. *See* Syl. Pt. 1, *Bull*, 204 W. Va. at 257, 512 S.E.2d at 179. In analyzing statutes, we must identify the intent expressed by the Legislature in promulgating the provision at issue. "The primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syl. Pt. 1, *Smith v. Workmen's Comp. Comm'r*, 159 W. Va. 108, 219 S.E.2d 361 (1975). In so doing, we must consider the particular language employed. "Where the language of a statute is clear and without

9

ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation." Syl. Pt. 2, *State v. Elder*, 152 W. Va. 571, 165 S.E.2d 108 (1968).

The mere fact that the parties disagree about the meaning of the statutory language at issue does not compel the conclusion that the statute is void for vagueness. *See State v. Yocum*, 233 W. Va. 439, 443, 759 S.E.2d 182, 186 (2014). The challenged language – "[a]ny person who, while engaged in the illegal use of a controlled substance with another[,]" W. Va. Code § 60A-4-416(b) – contains undefined words and phrases that we perceive to be plain and unambiguous nonetheless. "Undefined words and terms in a legislative enactment will be given their common, ordinary and accepted meaning." Syl. Pt. 6, in part, *State ex rel. Cohen v. Manchin*, 175 W. Va. 525, 336 S.E.2d 171 (1984). The common, ordinary, and accepted meaning ascribed to the term "engage[] in" is "to do (something)" or "to cause (someone) to take part in (something)."[10] We need not discuss in detail that "[a]ny person who, while engaged in the illegal use of a controlled substance with another" obviously encompasses any person who personally and illegally uses, takes, or otherwise consumes a controlled substance in company with another person. Furthermore, consistent with the common, ordinary, and accepted meaning of "engage[] in," "[a]ny person who, while engaged in the illegal use of a controlled substance with another" also encompasses one who causes another to illegally use, take, or otherwise consume a controlled substance, as in one who provides or procures the controlled

_____

[10] https://www.merriam-webster.com/dictionary/engage%20in. Accessed 26 Feb. 2021.

substance for, or sells the controlled substance to, the overdoser. Thus, any such person "who knowingly fails to seek medical assistance for such other person when the other person suffers an overdose of the controlled substance or suffers a significant adverse physical reaction to the controlled substance and the overdose or adverse physical reaction proximately causes the death of the other person," is in violation of West Virginia Code § 60A-4-416(b).[11]

We hold, therefore, that, within the context of West Virginia Code § 60A-4-416(b), "[a]ny person who, while engaged in the illegal use of a controlled substance with another" means any individual who personally and illegally uses, takes, or otherwise consumes a controlled substance together with another, as well as any individual who provides or procures the controlled substance for, or sells the controlled substance to, another to illegally use, take, or otherwise consume.

## B.

The second certified question asks "[w]hether the undefined phrase 'seek medical assistance' in the context of West Virginia Code § 60A-4-416(b) provides an adequate standard for adjudication." Petitioner argues that because "seek medical

---

[11] Given our discussion herein, we can easily dispense with petitioner's argument that the statute may be read to apply to one who is not engaged in the illegal use of a controlled substance with the overdoser but who is merely in some physical proximity to him or her at the time of the overdose. The plain and unambiguous language of the statute does not support such an interpretation.

assistance" is undefined in the statute, it lacks "any ascertainable standard," *Smith v. Goguen*, 415 U.S. 566, 578 (1974), and depends upon "wholly subjective judgments without statutory definitions, narrowing context, or settled legal meanings." *United States v. Williams*, 553 U.S. 285, 306 (2008). Absent a statutory definition as to what "seek medical assistance" requires, petitioner argues that ordinary citizens have no way of knowing what is required of them to satisfy West Virginia Code § 60A-4-416(b) and avoid criminal prosecution. According to petitioner, the indeterminacy of what it means to "seek medical assistance" would not be clarified until after a jury subjectively determines its meaning, requiring this Court to declare the language unconstitutionally vague and the statute void. *See Blair*, 190 W. Va. at 428, 438 S.E.2d at 608 (determining that what it means to "maintain adequate and suitable facilities" and "perform such service . . . as shall be reasonable, safe and sufficient for the security and convenience of the public, and the safety and comfort of its employees" within the context of West Virginia Code § 24-3-1 [1923] is broad and subjective because "[i]t would not be until after the trial before anyone would be able to answer the above questions, and the answer would depend on the jury's subjective interpretation of what is adequate or safe" (footnote omitted).).

In contrast, the State argues that the phrase "seek medical assistance" is not ambiguous because it provides a standard for adjudication and does not invite arbitrary enforcement of the statute. Though undefined in West Virginia Code § 60A-4-416(b), the phrase "seek medical assistance" is commonly understood by reasonable people to mean calling 9-1-1, a poison control facility, any type of first responder, or a medical facility

12

capable of treating an overdose. Alternatively, the State argues that if "seek medical assistance" is deemed to be ambiguous, then although the phrase must be strictly construed pursuant to the rule of lenity, it must also be defined consistent with the intent of the Legislature, which permits the Court to consider not only the particular statutory language, but the design of the statute as a whole, its object, and policy. *See State ex rel. Morgan v. Trent*, 195 W. Va. 257, 263, 465 S.E.2d 257, 263 (1995) (concluding that although the rule of lenity requires ambiguous language in a criminal statute to be strictly construed, it does not foreclose the Court from considering the particular statutory language and the design of the statute as a whole, its object, and policy). Thus, every reasonable construction of the statutory language must be resorted to by this Court in order to uphold its constitutionality, and any doubt resolved in favor of finding it to be constitutional. *See* Syl. Pt. 3, *James*, 227 W. Va. at 410, 710 S.E.2d at 101

In ascertaining what the phrase "seek medical assistance" requires within the context of West Virginia Code §60A-4-416(b), we begin with the word "seek." We find that the word "seek" should be afforded its common, ordinary and accepted meaning in the context in which it is used in West Virginia Code § 60A-4-416(b). *See* Syl. Pt. 6, *State v. Sulick*, 232 W. Va. 717, 753 S.E.2d 875 (2012) (In interpreting a statute, words will "be given their common, ordinary and accepted meaning in the connection in which they are used" (citation omitted).). Thus, the word "seek" in the phrase "seek medical assistance" in West Virginia Code § 60A-4-416(b) means "to go in search of: look for"; "to try to

discover"; "to ask for: request"; or "to try to acquire or gain[.]" https://www.merriam-webster.com/dictionary/seek. Accessed 3 March 2021.

We now turn to the phrase "medical assistance" in West Virginia Code §60A-4-416(b). We find guidance for the meaning of the phrase in another legislative enactment that also strives to mitigate fatal overdose events involving controlled substances. In enacting the Alcohol and Drug Overdose Prevention and Clemency Act ("Overdose Prevention and Clemency Act" or "Act"), West Virginia Code §§ 16-47-1 through 16-47-6, in 2015, the Legislature candidly recognized that

> (a) West Virginia currently has the highest drug overdose mortality rate in the United States. Since 1999, the number of drug overdose deaths in West Virginia has increased by over six hundred percent. Similarly, the age-adjusted death rate from alcohol-related overdoses has significantly increased in West Virginia, and throughout the United States, in the past ten years.
>
> (b) The Legislature finds it is in the public interest to encourage citizens to intervene in drug and alcohol overdose situations by seeking potentially life-saving emergency medical assistance for others without fear of being subject to certain criminal penalties.

At their core, both the Overdose Prevention and Clemency Act and the statute at issue in this case, West Virginia Code § 60A-4-416(b), encourage individuals to seek life-saving medical help during overdose emergencies. The Act applies to persons "who, in good faith and in a timely manner, seek[] emergency medical assistance for a person who reasonably appears to be experiencing an overdose[.]" W. Va. Code § 16-47-4(a)

14

(2015), in relevant part. The Act affords immunity from prosecution for certain enumerated offenses[12] when the person complies with the Act and seeks emergency medical assistance.[13]

Relevant to our discussion herein, the Overdose Prevention and Clemency Act defines "[e]mergency medical assistance" as "medical services provided to a person who may be experiencing an overdose by a health care professional licensed, registered or certified under chapter thirty or chapter sixteen of this code acting within his or her lawful scope of practice." W. Va. Code § 16-47-3(2) (2015). Among the health care professionals licensed, registered or certified under these chapters are physicians (*see* W. Va. Code §§ 30-3-1 through 18 and 30-14-1 through 16); physician assistants (*see* W. Va. Code §§ 30-3E-1 through 19); pharmacists (*see* W. Va. Code §§ 30-5-1 through 34); registered professional nurses (*see* W. Va. Code §§ 30-7-1 through 20); licensed practical nurses (*see* W. Va. Code §§ 30-7A-1 through 11); and emergency medical service personnel and providers (*see* W. Va. Code §§ 16-4C-1 through 23). Given that the common objective of both the Overdose Prevention and Clemency Act and West Virginia Code § 60A-4-416(b) is to save and preserve lives by encouraging immediate requests for medical intervention during overdose events, there can be no question that these statutes relate to the same

---

[12] *See id.*

[13] *See* W. Va. Code § 16-47-4(c) (2015) (setting forth what the person seeking emergency medical assistance must do in order to be eligible for immunity from prosecution).

subject matter and, thus, can be properly read in pari materia.[14] Under well-established rules of statutory construction, "[s]tatutes which relate to the same persons or things, or to the same class of persons or things, or statutes which have a common purpose will be regarded in [p]ari materia to assure recognition and implementation of the legislative intent." Syl. Pt. 5, in part, *Fruehauf Corp. v. Huntington Moving & Storage Co.*, 159 W. Va. 14, 217 S.E.2d 907 (1975).

Therefore, we hold that the phrase "seek medical assistance," within the context of West Virginia Code § 60A-4-416(b), means seek medical services of a health care professional licensed, registered, or certified under chapter thirty or chapter sixteen of the West Virginia Code acting within his or her lawful scope of practice.[15]

---

[14] The fact that the Overdose Prevention and Clemency Act requires that one seek "emergency medical assistance" for the overdoser in order to be eligible for immunity from prosecution for certain offenses, *see* W. Va. Code § 16-47-4(a), while West Virginia Code § 60A-4-416(b) requires that one seek "medical assistance" to avoid criminal prosecution, is of no moment. Both statutes clearly reflect that an overdose event is, by its very nature, emergent and life threatening, demanding immediate medical intervention.

[15] Prior to oral argument in this case, the parties appear to have been unaware of the Overdose Prevention and Clemency Act and that the phrase "emergency medical assistance" is defined therein. As a result, both parties argued in their briefs that the definition of the phrase "seek medical assistance" in *other states'* limited immunity statutes should inform this Court's determination of whether that phrase, in the context of West Virginia Code § 60A-4-416(b), is unconstitutionally vague. As we have concluded herein, the Overdose Prevention and Clemency Act (specifically, the definition of "emergency medical assistance" in West Virginia Code § 16-47-3(2)) should be read in pari materia with West Virginia Code § 60A-4-416(b).

## IV. Conclusion

Based upon all of the foregoing, we answer the certified questions as follows:

1. Whether the following phrase in West Virginia Code § 60A-4-416(b) is unconstitutionally vague: "Any person who, while engaged in the illegal use of a controlled substance with another?"

   Answer: *No.*

2. Whether the undefined phrase "seek medical assistance" in the context of West Virginia Code § 60A-4-416(b) provides an adequate standard for adjudication?

   Answer: *Yes.*

The certified questions having been answered, this case is dismissed from the docket of this Court and remanded to the circuit court for proceedings consistent with this opinion.[16]

Certified questions answered.

---

[16] Petitioner argues that, regardless of how the phrase "seek medical assistance" is construed, he requested medical assistance within the meaning of the statute by contacting Mr. Choma, who he believed to be a nurse, and then driving Mr. Cebulak to Mr. Choma's residence for the purpose of obtaining medical attention for Mr. Cebulak. He also contends that he was charged with violating West Virginia Code § 60A-4-416(b) merely because he was physically present at the time Mr. Cebulak overdosed as there was no evidence that he used, procured, provided, or sold any controlled substances to him. Because the matter is before this Court upon certified questions concerning questions of law, we do not pass upon the question of whether petitioner violated West Virginia Code § 60A-4-416(b).